UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADP, INC.<br>*a Delaware corporation,*<br><br>Plaintiff,<br><br>v.<br><br>WISE PAYMENTS LIMITED, WISE US INC.,<br><br>Defendants. | Civil Action No. 21-12457 (JXN)(JSA)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court on Defendants Wise Payments Ltd. and Wise US Inc.'s (collectively, "Wise" or "Defendants") motion to dismiss Plaintiff's Amended Complaint (ECF No. 33) and appeal of Magistrate Judge Jessica S. Allen's (the "Magistrate Judge") July 19, 2022 Order denying Wise's motion to stay this action (ECF No. 55). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated herein, Defendants' motion to dismiss (ECF No. 33) and appeal of the Magistrate Judge's July 19, 2022 Order (ECF No. 55) are **DENIED**.

I. **BACKGROUND**[1]

Plaintiff ADP, Inc. ("ADP" or "Plaintiff") is a Delaware limited liability company and a provider of human capital management solutions, payroll, talent, and benefits administration, as

---

[1] Unless otherwise indicated, all facts in this section are taken from the Amended Complaint, ECF No. 11, and are assumed to be true for purposes of this Opinion. When reviewing a Rule 12(b)(6) motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

well as business outsourcing services, analytics and compliance expertise. (Am. Compl. ¶ 5.) Defendant Wise Payments Limited is a private limited company based in the United Kingdom. (Am. Compl. ¶ 12.) Defendant Wise US Inc. is a Delaware corporation and a wholly owned subsidiary of Wise Payments Limited. (Am. Compl. ¶¶ 13, 14.) Defendants provide financial services, including but not limited to multi-currency international money transfer and payroll services to businesses and consumers. (Am. Compl. ¶ 4.)

Plaintiff alleges that, in 2017 it launched its WISELY brand offering modern banking and financial solutions—bank account alternatives including debit cards and a mobile application that enable employers to directly deposit payroll, and workers to access their pay from multiple sources. (Am. Compl. ¶¶ 3, 6.) ADP claims to have rights in what it describes as the well-known WISELY and WISELY-based trademarks and service marks (collectively, the "WISELY Marks"), which it uses in connection with its alternative banking solutions. (Am. Compl. ¶¶ 1, 3.) The Amended Complaint identifies six U.S. trademark registrations for the WISELY mark standing alone, and for marks that predominantly consist of WISELY with filing dates starting March 19, 2019, and dates of first use starting at least as early as November 28, 2017, all on the Principal Register based on inherent distinctiveness. (Am. Compl. ¶ 20.) ADP also lists five U.S. trademark applications for marks that predominantly consist of WISELY, all of which have been published for opposition without an opposition or request for an extension of time to oppose being filed against them, and all of which are on the Principal Register based on inherent distinctiveness. (Am. Compl. ¶ 21.) ADP claims that it has invested significant time and resources in promoting its WISELY products and services, including through social media and direct advertisements to employees at over 70,000 companies and through ADP's websites at https://info.mywisely.com/ and http://wisely.adp.com/. (Am. Compl. ¶ 22.) As a result, ADP claims that its WISELY Marks

enjoy extensive goodwill, and the WISELY brand signals to consumers that the products and services offered under the WISELY Marks come from one source, ADP. (Am. Compl. ¶¶ 23 - 24.)

Plaintiff alleges, "[u]pon information and belief" Defendants began offering multi-currency international money transfer services in the United States under the TRANSFERWISE trademark and brand in or around February 2015. (Am. Compl. ¶ 26.) According to the Amended Complaint, in or around August 2019, nearly two years after ADP began using certain of its WISELY Marks, Defendants began filing trademark applications in the U.S. and abroad to register the WISE mark both in standard characters and together with a flag design element (collectively, the "WISE Marks"). (Am. Compl. ¶ 27.)

On August 19, 2019, Defendants filed U.S. Trademark application No. 88/586,219 for the mark WISE and Design. (Am. Compl. ¶ 28.) Defendants' application No. 88/586,219 matured to U.S. Trademark Registration No. 6022839 on March 31, 2020. (*Id.*) Since then, Defendants have filed several new trademark applications for WISE and marks that predominantly consist of WISE. (Am. Compl. ¶ 29.) Each of the WISE Applications was filed based upon an intent-to-use under Section 1(b) of the Trademark Act. (Am. Compl. ¶ 30.)

According to the Amended Complaint, on or around June 17, 2020, ADP and Defendants discussed their registration and use of WISELY and WISE, respectively, in the United States, European Union, and Canada. (Am. Compl. ¶ 31.) ADP asserts, "[u]pon information and belief" that at the time of these discussions, Defendants had not yet used the WISE Marks, but had filed applications to register the same in the United States, European Union, and Canada. (*Id.*) ADP claims that as a result of the parties' discussions, Defendants had actual notice of ADP's earlier U.S. rights in the WISELY Marks, and of ADP's objection to Defendants' registration and use of the WISE Marks in the United States. (*Id.*)

3

ADP alleges that years after it established strong trademark rights through use and federal registration of many WISELY Marks, and despite Defendants' actual knowledge of these rights, on February 22, 2021, Defendants announced the rebranding of their primary "house" mark from TRANSFERWISE to WISE, expanded their product and service offerings under the new WISE brand (the "WISE Goods/Services"), launched a new website at https://www.wise.com, re-named their mobile application WISE, and started using the WISE trademark to promote their debit cards and related accounts. (Am. Compl. ¶ 32, Exhibit A.) Plaintiff alleges that "[t]he goods and services that Defendants now feature under the WISE Marks directly overlap with ADP's services, including but not limited to giving businesses and consumers a way to tie payroll to a debit card, and offer a competing debit card tied to the infringing WISE brand and mobile application to the same class of consumers." (Am. Compl. ¶ 33.)

Also, ADP alleges that Defendants' WISE Marks are confusingly similar to ADP's WISELY Marks in appearance, sound, meaning, and commercial impression and the WISE Goods/Services are closely related, if not identical in certain respects, to ADP's WISELY products and services. (Am. Compl. ¶¶ 39, 40.) ADP claims its rights in the WISELY Marks predate any purported rights Defendants have in the infringing WISE Marks. (Am. Compl. ¶ 36.) Specifically, ADP claims states that its earliest trademark applications for the WISELY-based marks was filed on September 20, 2017. (Am. Compl. ¶ 37.) In contrast, Defendants first trademark applications for the WISE Marks was filed on August 19, 2019. (*Id.*) ADP states that pursuant to 15 U.S.C. § 1057(c), "its applications to register the WISELY Marks constitute constructive use of the WISELY Marks, and confer 'a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person,' and this nationwide right of priority predates Defendants' constructive first use of the WISE Marks." (*Id.*) Additionally,

ADP claims to be the prior and senior user of the WISELY marks as it has continuously used WISELY and certain of the WISELY Marks since 2017, whereas Defendants started using the WISE Marks in February 2021. (Am. Compl. ¶ 38.)

On June 11, 2021, ADP filed a Petition for Cancellation of Defendants' U.S. Registration No. 6022839 with the U.S. Patent and Trademark Office Trademark Trial and Appeal Board (*ADP, Inc. v. Transferwise Ltd.*). (Am. Compl. ¶ 28.) That same day, ADP also filed this action against Defendant for trademark infringement and unfair competition under federal and state law and amended the complaint on July 27, 2021. (*See*, Compl., ECF No. 1; Am. Compl., ECF No. 11.)

In the Amended Complaint, ADP alleges that Defendants' adoption and use of the WISE Marks in connection with the WISE Goods/Services, is likely to cause confusion as to the affiliation, connection, association, origin, sponsorship, and/or approval of Defendants' goods and services with those of ADP, constituting trademark infringement under 15 U.S.C. § 1114 (Count One), and false designation of origin under 15 U.S.C. § 1125(a) (Count Two), in violation of Sections 32 and 43(a) of the Lanham Act, unfair competition under the New Jersey Unfair Competition Act (N.J.S.A. §§ 56:4-1 et seq.) (Count Three), and common law unfair competition (Count Four). (Am Compl ¶¶ 44-74.) ADP seeks damages and injunctive relief, including the cancellation of the WISE Marks. (Am. Compl. ¶ 10.)

On September 24, 2021, Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. (ECF No. 33). Defendants argue Plaintiff's Amended Complaint (1) is a shotgun pleading that violates Rule 8 and fails to provide Wise with sufficient notice of Plaintiff's claims and, (2) does not plausibly allege infringement of all the WISELY Marks by all the WISE Marks, or unfair competition, under federal or state law. (ECF

No. 33 at 23.) Plaintiff opposed Defendants' motion (ECF No. 37) and Defendants replied in further support (ECF No. 38).

On January 14, 2022, Defendants moved to stay this litigation pending the outcome of pending parallel proceedings[2] before the U.S. Trademark Trial and Appeal Board ("TTAB"). (ECF No 44.)[3] On July 19, 2022, the Magistrate Judge issued and Opinion and Order denying Wise's motion to stay this action pending parallel proceedings at the Trademark Trial and Appeal Board (the "July 2022 Order"). (*See* ECF Nos. 52, 53.) The Magistrate Judge found that Defendants "ha[d] not met its heavy burden of demonstrating a clear case of hardship or inequity if it is required to go forward with the instant suit at this time." (ECF No. 52 at 11.)

On August 3, 2022, Defendants' filed an appeal of the Magistrate Judge's July 2022 Order. (ECF No. 55.) ADP opposed Defendants' appeal (ECF No. 56) and Defendants replied in further support (ECF No. 57).

This matter is now ripe for the Court to decide.

## II. LEGAL STANDARD

### A. Motion to Dismiss

FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The court need not accept as true "legal conclusions," and

---

[2] The proceedings before the U.S. Trademark Trial and Appeal Board consist of Opposition Nos. 91268730, 91269418, and 91271453, and Cancellation Nos. 92077350 and 92077983. (ECF No. 44.)

[3] ADP opposed the appeal (ECF No. 45) and Defendants replied in further support (ECF No. 46).

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B. Appeal from a Magistrate Judge's Order

"Appeals from the orders of magistrate judges are governed by Local Civil Rule 72.1(c)." *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 09-571, 2013 WL 322595, at *2 (D.N.J. Jan. 22, 2013). The standard by which a magistrate judge's decision must be reviewed depends on whether the issue addressed was dispositive or non-dispositive. *Id.* A magistrate judge's decision regarding case management is non-dispositive under 28 U.S.C. § 636(b)(1)(A). *Schiano v. MBNA*, No. 05-1771, 2009 WL 1416040, at *2 (D.N.J. May 19, 2009). And Local Civil Rule

72.1(a)(3)(A) categorizes motions to expedite or postpone the trial of cases as civil case management. L. Civ. R. 72.1(a)(3)(A).

On appeal of a non-dispositive order, a district court may modify or set aside a magistrate judge's order if the ruling was clearly erroneous or contrary to law. *Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009). On a non-dispositive motion, a magistrate judge's legal conclusions will be reviewed *de novo*, *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006), but a magistrate judge's decision on discretionary matters is entitled to great deference and reversible only if the magistrate judge has abused his or her discretion. *Eisai*, 629 F. Supp. 2d at 433–34; *see also Hartford Life*, 237 F.R.D. at 547–48 (holding that the district court shall not reverse the magistrate judge's decision even when the district court judge may have decided the matter differently). "An abuse of discretion may be found where the [magistrate] judge's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Cephalon, Inc. v. Sun Pharm. Indus., Ltd.*, No. 11-5474, 2013 WL 3417416, at *2 (D.N.J. July 8, 2013) (alteration in original) (internal quotation marks omitted). "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J. 2000).

### III. DISCUSSION

#### A. Defendants' Motion to Dismiss the Amended Complaint

As noted above, ADP's Amended Complaint states four causes of action against Defendants: trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count One), false designation of origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)

(Count Two), unfair competition under New Jersey statutory law (Count Three), and common law unfair competition (Count Four). (Am. Compl. ¶¶ 44 – 74.)

Defendants move to dismiss the Amended Complaint, arguing that ADP's complaint is a shotgun pleading that fails to provide Wise with sufficient notice of ADP's claims and does not plausibly allege infringement of all of the WISELY Marks by all of the WISE Marks, or unfair competition, under federal or state law. (ECF No. 33-2 at 23). Because ADP has alleged sufficient facts in support of their claims, the motion to dismiss will be denied.

### 1. *Shotgun Pleading*

Defendants contend that the Amended Complaint because it amounts to a "shotgun pleading" that fails to provide Defendants with sufficient notice of ADP's claims (ECF No. 33-2 at 24-25.) The Court disagrees.

Federal Rule of Civil Procedure Rule 8(a)(2) requires that a complaint set forth a "short and plain statement of the claim[s] showing that the [plaintiff] is entitled to relief." Each allegation in the complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Rule further requires that a complaint set forth the plaintiff's claims with enough specificity as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (internal quotation marks omitted). A complaint must contain "sufficient facts to put the proper defendants on notice so they can frame an answer" to the plaintiff's allegations. *See Dist. Council 47, Am. Fed'n of State, Cty. & Mun. Emps., AFL–CIO by Cronin v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986).

Here, the Amended Complaint alleges that ADP owns valid registered Trademarks and applications for the WISELY Marks. (*See* Am Compl. ¶¶ 20-21.) Defendants' adoption and use of the WISE Marks in connection with the WISE Goods/Services is likely to cause confusion as to

the affiliation, connection, association, origin, sponsorship, and/or approval of Defendants' goods and services with those offered by ADP under the WISELY Marks, constituting trademark infringement, false designation of origin and unfair competition in violation federal and state law. (*See* Am. Compl. ¶¶ 39-42.) The Court finds that ADP's allegations are pleaded with sufficient clarity to give the Defendants adequate notice of the claims against them and the grounds upon which each claim rests. Accordingly, the Amended Complaint is not a shotgun pleading.

### 2. *Trademark Infringement and Unfair Competition/False Designation of Origin*

The Third Circuit uses an "identical" standard to measure federal trademark infringement under Section 32, 15 U.S.C. § 1114 and unfair competition/false designation of origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210, 210 n.5 (3d Cir. 2000).[4] To prove either form of Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a

---

[4] Under the Lanham Act Section 32, 15 U.S.C. § 1114:

> Any person who shall, without the consent of the registrant[,] use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1)(a). Additionally, the Lanham Act Section 43(a) proscribes unfair competition or, as the statute refers to it, "false designation of origin" or "false description." 15 U.S.C. § 1125(a). The statute provides that: Section 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association ... or as to the origin, sponsorship, or approval of ... goods, services, or commercial activities ... or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B).

likelihood of confusion. *A & H Sportswear*, 237 F.3d at 210. These elements apply to both statutory and common law infringement claims. *See Techs., Inc. v. NJ Ale House, LCC*, No. CIV. 2:14-2044 KM, 2015 WL 1197531, at *5 (D.N.J. Mar. 13, 2015). Thus, this Court's discussion of each element applies equally to ADP's federal and state claims.

a. Validity and Ownership

Defendants argue that ADP has failed to adequately plead the validity and legal protectability of the WISELY Marks. (*See* ECF No. 33-2 at 26-35.)

The Lanham Act protects unregistered marks to the same extent as registered marks because trademark rights emanate from use and not merely registration. *Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 598 (D.N.J. 2000). "If the mark at issue was federally registered and had become 'incontestable,' pursuant to 15 U.S.C. §§ 1058 and 1065, validity, legal protectability, and ownership are proved." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir.1991)).[5] "Where a mark has not been federally registered or has not achieved incontestability, validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." *Ford Motor*, 930 F.2d at 291. With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce. *Ford Motor*, 930 F.2d at 292.

Here, ADP alleges to be the owner of U.S. trademark registration no. 5,984,501 for the WISELY mark standing alone and of registration nos. 711,654; 5,986,500; 5,705,333; 5,957,659; and 5,682,270 for marks that predominantly consist of WISELY "all on the Principal Register based on inherent distinctiveness" and has attached copies of the U.S. trademark registration

---

[5] A mark is incontestable if it has been "in continuous use for five years subsequent to the date of … registration and is still in use in commerce." 15 U.S.C. § 1065.

certificates to their Amended Complaint. (Am. Compl. ¶ 20; *see id.*, Exhibit. C.) ADP alleges that the WISELY Marks have dates of first use "starting at least as early as November 28, 2017." (Am. Compl. ¶ 20.) ADP also claims ownership of U.S. trademark application nos. 88/361,641; 88/226,983; 88/042,571; 88/042,558; and 88/042,587 for marks that predominantly consist of WISELY (Am. Compl. ¶ 21; *see id.*, Exhibit D.) ADP claims that these applications have "been published … without an opposition or request for extension of time to oppose being filed against them, and … are on the Principal Register based on inherent distinctiveness." (Am. Compl. ¶ 20.) Further, ADP alleges common law rights in its "inherently distinctive WISELY Marks" namely, that as a result of ADP's investment of significant time and resources in promoting its WISELY products and services, as well as substantial media attention, the WISELY Marks enjoy extensive goodwill, and signal to consumers that the products and services offered under the WISELY Marks come from one source, ADP. (Am. Compl. ¶¶ 22–24.)

On a motion to dismiss for failure to state a claim, this Court must accept all plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. In so doing, the Court accepts ADP's allegations that it has been using the WISELY Marks for longer than Defendants. The Court also accepts ADP's allegation that the WISELY Marks are valid and protectable. Consequently, ADP has alleged facts sufficient to support validity, protectability, and ownership.

### b. Likelihood of confusion

"The third element required to prove infringement or unfair competition—likelihood of confusion—is a question of fact." *Lorillard Techs,* 2015 WL 1197531, at *8 (citing *CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F.Supp.2d 400, 406 (D.N.J. 2010)). A likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar

mark." *A & H Sportswear*, 237 F.3d at 211 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir.1992) (quotation marks omitted). In evaluating whether there is a likelihood of confusion between marks, courts in the Third Circuit employ "the *Lapp* factors."[6] However, "[i]f products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves." *A & H Sportswear*, 237 F.3d at 214.

Defendants argue that ADP fails to plausibly plead likelihood of confusion. (ECF No. 33-2 at 31.) The Court disagrees.

At this stage, it is sufficient that ADP has alleged that: the WISE Marks are confusingly similar to ADP's WISELY Marks in appearance, sound, meaning, and commercial impression. "The word 'WISELY' is the adverbial form of the word 'WISE,' both of which share the same or virtually the same meaning, and are highly similar in appearance and sound as well." (Am. Compl. ¶ 39) (*Lapp* factor 1); "Defendants had actual notice of ADP's earlier rights in the WISELY Marks, and of ADP's objection to Defendants' registration and use of the WISE Marks in the United States." (Am. Compl. ¶ 31) (*Lapp* factor 5); Defendants' "WISE mobile application [] provides many of the same functionalities as ADP's mobile application, branded WISELY and MyWisely." (Am. Compl. ¶ 34) (*Lapp* factor 7); "The respective products and services of ADP and Defendants . . . are directed to the same classes of consumers, and are marketed and advertised through the same or virtually the same channels of trade." (Am. Compl. ¶ 41) (*Lapp* factor 8); "The goods and services that Defendants now feature under the WISE Marks . . . directly overlap with ADP's

---

[6] The *Lapp* factors include: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).

services. . ..." (Am. Compl. ¶ 33) (*Lapp* factor 9); "The WISE Goods/Services are closely related, if not identical in certain respects, to ADP's WISELY products and services." (Am. Compl. ¶ 40; (*Lapp* factor 9). At this early stage in litigation, ADP has articulated facts that sufficiently allege the WISE Marks are confusingly similar to the WISELY Marks. "Whether, in fact, there is a likelihood of confusion between ADP's WISELY Marks and Defendants' WISE Marks is a fact-laden inquiry that is more appropriately undertaken at the summary judgment stage. *Cambridge Pavers, Inc. v. EP Henry Corp.*, 407 F. Supp. 3d 503, 509 (D.N.J. 2019).

Based on these allegations, ADP has made out plausible claims for trademark infringement and unfair competition/false designation of origin. Accordingly, the Defendants' motion to dismiss the Amended Complaint is denied.

### B. Defendants' Appeal of the Magistrate Judge's July 2022 Order

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. Motions to stay proceedings are committed to a district court's "sound discretion." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976). In determining whether to grant a motion to stay, courts in the Third Circuit consider (i) judicial efficiency; (ii) harm or unfair prejudice to the non-moving party; and (iii) the hardship and inequity to the moving party if the stay is denied. *Tigercat Int'l, Inc. v. Caterpillar Inc.*, No. 16-1047-GMS, 2018 WL 2049816, at *2 (D. Del. May 2, 2018); *Onyx Enters. Int'l Corp. v. Volkswagen Grp. of America, Inc.*, No 3:20-09976 (BRM) (ZNQ), 2021 WL 1338731, at *3 (D.N.J. Apr. 9, 2021).

Defendants argue that in the July 2022 Order, the Magistrate Judge incorrectly applied the factors considered when determining whether a motion to stay is warranted. (*See generally* ECF No. 55.) Defendants contend that the Magistrate Judge (i) gave undue weight to the fact that the TTAB proceedings are at an early stage, while giving almost no consideration to the fact that the district court proceedings are also at its infancy (*id* at 6); (ii) erroneously required specific proof that the now suspended TTAB proceedings would necessarily advance more expeditiously than this Court's proceedings (*id.* at 8); (iii) wrongly concluded that staying the action would not simplify or resolve the issues (*id.* at 9); (iv) incorrectly concluded that a stay would unfairly prejudice Plaintiffs (*id.* at 11); (v) erred in finding that denying a stay would work no hardship or inequity to Defendants (*id.* at 12); and (vi) erroneously placed significant weight on the TTAB's suspension of its parallel proceedings (*id.*).

The Magistrate Judge's July 2022 Order denying a stay of the proceedings pending the outcome of suspended proceedings before the TTAB was not erroneous or contrary to law. As to the first factor, the Magistrate Judge concluded that Defendants had not demonstrated that a stay will promote judicial efficiency. (ECF No. 52 at 6.) Contrary to Defendants' contention, the Magistrate Judge considered stages of both this civil action and the TTAB proceedings. The Magistrate Judge noted that while the instant action was in its early stages and the TTAB proceedings have been pending longer, the TTAB proceedings have not advanced procedurally as "the parties ha[d] not conducted discovery conferences, exchanged initial disclosures, or served any discovery requests." (ECF No. 52 at 7.) Further, the Magistrate Judge found that "[e]ven if this Court were to stay the action, and the TTAB were to reconsider its Suspension Orders and issue decisions on ADP's cancellation and opposition petitions, those decisions are subject to potential further review before the United States Court of Appeals for the Federal Circuit or a

second federal district court." (*Id.* at 8) (citing *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 144 (2015) (quoting 15 U.S.C. § 1071). Accordingly, the Magistrate Judge concluded that a stay would not promote judicial economy. Next, the Magistrate Judge determined that ADP would be unfairly prejudiced if forced to wait for the suspended TTAB proceedings to resume and be fully decided on the merits before litigating ADP's claims of infringement and related claims before this Court. (ECF No. 52 at 9.) As such, the Magistrate Judge found that the second factor weighed against the imposition of a stay. Lastly, the Magistrate Judge found that Defendants did not satisfy their burden of showing that they will be adversely impacted by having to litigate in this Court rather than before the TTAB. (*See id.* at 10.) As noted by the Magistrate Judge, Defendants argued, without submitting evidence, that they "has already spent considerable sums defending" several proceedings before the Board, and that it "should not be forced to expend additional sums defending district-court proceedings that are even costlier." The Magistrate Judge determined that this factor alone did not warrant issuing the stay, especially given that "the parties spent virtually no time before the TTAB and this Court [undisputedly] has jurisdiction over all aspects of [ADP's] . . . claims." Consequently, the Magistrate Judge found that the "hardship to Wise, if any, will be negligible, and thus a stay is not warranted based on this final factor." (*Id.*)

The Magistrate Judge's consideration of these matters is entitled to great deference, *Eisai*, 629 F. Supp. 2d at 433–34, and Defendants fail to show that the Magistrate Judge abused her discretion in analyzing these considerations and granting the stay. Further, while Defendants urge the Court to adopt "[t]he better-reasoned" position— that TTAB proceedings would necessarily simplify the issues before the district court. (ECF No. 55-1 at 10.) The Court finds that the Magistrate Judge appropriately considered how a decision from the TTAB could affect the case in the District Court with respect to judicial economy. (*See* ECF No. 52 at 8.)

In light of the foregoing, the Court finds that the most fair and efficient way to continue in this matter is to deny the motion for a stay and proceed with discovery. In sum, Defendants have not provided the Court with any reason to conclude that the Magistrate Judge's July 2022 Order is clearly erroneous or contrary to law, and the appeal is therefore denied.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss (ECF Nos. 33) and appeal of the Magistrate Judge's July 19, 2022 Order (ECF No. 55) are **DENIED**. An appropriate Form of Order accompanies this Opinion.

DATED: June __1__, 2023

_____
JULIEN XAVIER NEALS
United States District Judge